UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA ANN DAVIS and
JACQUELIN ANN HICKS,

    Plaintiffs,

v.

CASE NO. 15-CV-10161
HONORABLE GEORGE CARAM STEEH

DOUGLAS HITE, ROBERT FARMER,
MIKE WOLOSUK, GERALD DRIGGETT,
SCOTT GOECKER, JOSEPH PHILLIPS,
KEVIN MIHAILOFF, JACOB NEERING,
and TOWNSHIP OF MT. MORRIS,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (DOC. #14) AND DISMISSING CASE**

The plaintiffs, two sisters, bring this civil rights case alleging that, as they were passengers in separate vehicles traveling in the Township of Mount Morris (the "Township"), both of the vehicles were singled out for random traffic stops/detentions, even though neither vehicle violated any traffic laws. Plaintiffs claim that, as the defendant police officers were arresting two people from the vehicles with outstanding warrants, they were using excessive force. The defendant officers then allegedly began striking all of the occupants in both vehicles, including the plaintiffs. Plaintiffs and the other occupants of the vehicles were arrested on felony charges of assaulting/resisting/obstructing a police officer, among other charges. Charges against the plaintiffs were eventually dismissed.[1]

---

[1] Defendants contend that the charges were dismissed because one of the defendant police officers could not attend plaintiffs' criminal proceedings due to medical reasons. Plaintiff's dispute this assertion.

Plaintiffs filed this action in state court; defendants removed to this court. The remaining counts of plaintiffs' second amended complaint are:

    Count V-     Violation of 4th and 14th Amendments

    Count VI-     Deprivation of Due Process Liberty Interests

    Count VII-     Deprivation of Due Process Property Interests

    Count VIII-     Gross Negligence (Lack of Policy)

    Count IX-     Gross Negligence (Physical Force)

    Count X-     Conspiracy to Violate Civil Rights

    Count XI-     Denial of Equal Protection Under Federal Constitution[2]

    Count XIII-     Deliberate Indifference[3]

There are two sets of defendants — the Township and several officers from the City of Mt. Morris Police Department, and police officers from the Clio Police Department. Now before the court is the Township's and the police officers from the Mt. Morris Police Department's motion to dismiss and/or for summary judgment seeking to dismiss the second amended complaint in its entirety (Doc. #14). The court held oral argument on September 9, 2015. At the hearing, plaintiffs voluntarily dismissed all claims against the two police officers from the Clio Police Department — Kevin Mahailoff and Jacob Neering — and Mt. Morris Police Department officers Douglas Hite, Gerald Driggett, Scott Goecker, and Joseph Phillips. For the reasons stated on the record at the hearing, the claims

---

[2] Plaintiffs brought this claim under the Michigan Constitution also. At oral argument, plaintiffs expressly abandoned any claim under the Michigan Constitution.

[3] Through stipulation, Counts I, II, III, IV and XII alleging assault, battery, invasion of privacy, false imprisonment and malicious prosecution, have been dismissed with prejudice (Doc. #24).

against these officers are DISMISSED. Thus, the remaining claims are alleged only against the Township and Officers Farmer and Wolosuk (collectively, "defendants"). For the reasons that follow, defendants' motion to dismiss and/or for summary judgment will be granted.

## I. BACKGROUND

On October 22, 2011, around 10:30 p.m., plaintiffs were in two separate vehicles traveling alongside each other in the Township, allegedly coming home from a church concert. (Second Am. Compl. ¶¶ 12-13). Plaintiffs allege that, "[f]or reasons never duly or properly explained," both vehicles were pulled over in a single traffic stop. (*Id.* ¶¶ 14–15). What followed was an altercation with the police described by plaintiffs as "increasing chaos" and "escalating violence" where the police allegedly used excessive force against them. The confrontation was captured through dash-cam video.

Although the allegations in plaintiffs' second amended complaint may conflict with what is seen in the video, the court on summary judgment rejects the allegations in the complaint to the extent they are in conflict with the video. The Sixth Circuit has recently explained that where a dash-cam video depicts all genuinely disputed facts, the facts are viewed in the light depicted by the videotape and accompanying audio. *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (citing *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014); *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

The dash-cam footage begins with defendant Officer Robert Farmer, a police officer with the City of Mt. Morris Police Department, initiating a traffic stop on a vehicle driven by non-party Julie Emma Davis ("Julie"). It was later determined that plaintiff Anita Ann Davis

("Anita"), her children, non-parties Betty (12 years old), Corey (10 years old) and Andrew (6 years old), were back seat passengers in the vehicle, and non-party Inocencia Joyce ("Inocencia") was the front-seat passenger. Anita was holding a baby in her hands.

Upon walking up to the driver's side window, Officer Farmer asked Julie for her license and registration and questioned why there was a baby in the back seat without a car seat. Julie handed Officer Farmer someone else's driver's license, and, when asked for her driver's license, Julie responded that she did not have a license. Officer Farmer asked Julie to step out of the vehicle.

Outside of the vehicle, Officer Farmer explained to Julie that he pulled over the vehicle because the back passenger door was open while the vehicle was moving. Julie explained that, while she was driving, someone realized that the door was not fully closed.[4] During the exchange between Officer Farmer and Julie, Officer Farmer asked Julie to pull her hands out of her pockets multiple times; Julie apologized for placing her hands in her pockets. From the dash-cam video, it appears that Officer Farmer's initial approach to the vehicle and talking to Julie outside of the vehicle was not as tactful as he could have been; he was raising his voice and speaking to her in an aggressive manner.

After talking to Julie outside of the vehicle she was driving, Officer Farmer brought her to the back of his vehicle (which was directly behind the vehicle Julie was driving), and he placed her in the back seat of the patrol vehicle. Because the back seat of Officer

---

[4] In a phone call made by Julie to her mother while she was in the back seat of Officer Farmer's vehicle, she could be heard saying that it was plaintiff Anita Davis who opened the door while the vehicle was moving.

-4-

Farmer's vehicle cannot be seen through its own dash-cam, it is not clear whether Officer Farmer closed the door after Julie was inside of the vehicle.

While Julie was in the back of his patrol vehicle, Officer Farmer ran her information through the appropriate law enforcement databases and determined that she had outstanding warrants for her arrest, one for previously driving without a driver's license. Officer Farmer informed Julie that she was being cited for driving without a driver's license and for a baby riding in the vehicle without a proper car seat. He told Julie that the vehicle was going to be impounded, but that he would allow Julie and the other occupants to obtain a ride home. Julie told Officer Farmer that there was no one who could come to the scene and take them home.

While Officer Farmer was talking to Julie inside of his vehicle, Officer Mike Wolosuk arrived on the scene to assist with the traffic stop. Around the same time, another vehicle — later determined to be the vehicle occupied by non-party Laura Davis ("Laura") and plaintiff Jacquelin Ann Hicks ("Jacquelin") — had stopped behind Officer Farmer's vehicle, out of view of the dash-cam. From statements made by Officer Farmer later in the video, he believed that the second vehicle was called by Julie to transport everyone home.

Leaving Julie in the back seat of his vehicle, Officer Farmer approached the vehicle he had pulled over, this time from the front passenger side. The front passenger door was open. Officer Farmer informed the passengers to exit the vehicle because the car was going to be impounded. Inocencia and Anita repeatedly asked Officer Farmer why he was going to impound the vehicle; he told them that Julie was driving without a driver's license, and that if they did not exit the vehicle they would be arrested. Despite Inocencia's

insistence that she had a valid driver's license, Officer Farmer told the occupants that the he was going to impound the vehicle because Julie was driving without a driver's license.

From the inside of the vehicle, Inocencia was refusing to exit, and she protested that Officer Farmer did not have the authority to arrest her, that she had the right to freedom of speech and that Officer Farmer was a "freak." Officer Farmer continued to ask the occupants to exit the vehicle.

Eventually, Anita exited the back of the vehicle holding a baby. Officer Farmer told Anita to step back towards his vehicle; she did not comply. She remained close to Officer Farmer questioning his authority to tell her to step back. While this was happening, Inocencia stepped out of the vehicle standing directly in front of Officer Farmer. At this point, Officer Wolosuk walked from where Officer Farmer's vehicle was parked and stood near Anita.

Officer Farmer repeated his demands that Inocencia and Anita back up towards his patrol vehicle. Inocencia protested that she wanted to collect all of her belongings from the vehicle. Officer Farmer told Inocencia not to collect anything, to step back towards his vehicle and to "get away from the car right now." When Inocencia refused to comply with Officer Farmer, he attempted to get her away from the vehicle by pulling her by her arm. She responded by shaking loose and throwing her fists at his direction. Officer Farmer was unable to get a hold of Inocencia.

At this point, Officer Wolosuk grabbed Anita by her arm and directed her to Officer Farmer's vehicle. She continued to ask "why" and refused to follow Officer Wolosuk's direction. A few seconds later the children sitting in the back of the vehicle exited and walked away towards Officer Farmer's vehicle. One of the children grabbed the baby from

Anita and walked out of the view of the camera. Anita, Inocencia, and another woman stayed outside of the vehicle and there was yelling back and forth between them and the officers who were telling them to step back.

As Officer Farmer was attempting to grab a hold of Inocencia's arm and get her to comply, Anita pushed at Officer Farmer and told him to "stop." Officer Farmer responded by pushing Anita off of him and taking his attention back to Inocencia.

While this was happening, Julie made it out of the back seat of Officer Farmer's patrol vehicle[5] and, along with plaintiff Jacquelin, approached Officers Farmer and Wolosuk as they were dealing with Inocencia and Anita. The officers were outnumbered 5-2.

Officer Wolosuk diverted his attention to Julie, getting her to the ground to place her in handcuffs. However, plaintiffs and another females attempted to approach Officer Wolosuk as he was securing Julie. Officer Farmer took his attention off of Inocencia, pulled each of the females (including the plaintiffs) and pushed them away from Officer Wolosuk. Anita stood back up after being pushed away the first time; Officer Farmer pushed her away again.

While Officer Wolosuk was securing Julie, and after getting everyone away from Officer Wolosuk, Officer Farmer pulled out his taser and threatened to use it on anyone who did not get down on the ground. At this point, everyone complied and got down on the ground. Backup arrived to help secure everyone in handcuffs and take them to the police station.

---

[5] It is not clear whether someone let Julie out of the vehicle or if she made it out herself.

Plaintiffs were charged with assaulting/resisting/obstructing a police officer, among other charges. The charges were eventually dropped and this lawsuit followed.

## II. LEGAL STANDARD

Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted, or, alternatively, for judgment on the pleadings and/or summary judgment. Because defendants have attached matters outside of the pleadings to the motion, the court considers the motion under Federal Rule of Civil Procedure 56's summary judgment standard.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Generally, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). However, as explained above, where a dash-cam video depicts all genuinely disputed facts, the facts are viewed in the light depicted by the videotape. *Rudlaff v.*

*Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (citing *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014); *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

### III. ANALYSIS

Plaintiffs allege federal and state law causes of action against the remaining defendants. The court addresses the claims made against the individual officers first, followed by a discussion of the claims against the Township.

**A. Claims Against Individual Officers Farmer and Wolosuk**

**1. The Constitutional Claims**

Plaintiffs allege excessive force in violation of the 4th and 14th Amendments to the U.S. Constitution (Count V). Plaintiffs also allege that the defendants' excessive force deprived them of their due process liberty interests (Count VI) and property interests (Count VII). In addition, plaintiffs contend that they were denied equal protection of the laws contrary to similarly situated motorists (Count XI), that defendants' actions amounted to deliberate indifference to their needs (Count XIII), and that the defendants conspired to violate their civil rights (Count X).

**i. Qualified immunity Standard**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, __ U.S. __, 134 S.Ct. 3, 4–5 (2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation marks omitted). It protects all officers except "the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and internal quotation

marks omitted). As the Supreme Court has explained, "[t]his accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Id.* (citation omitted). Indeed, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments. . . ." *Stanton*, 134 S.Ct. at 5 (citing *Ashcroft v. al-Kidd*, 563 U.S. __, __, 131 S.Ct. 2074, 2085 (2011) (quotation marks omitted)). *See also Essex v. Cnty. of Livingston*, 518 F. App'x 351, 356 (6th Cir. 2013) (citation omitted)).

The court employs a two-step inquiry in deciding qualified immunity questions. *Baynes v. Cleland*, __ F.3d __, 2015 WL 5000615, at *5 (6th Cir. 2015). "'First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation? These prongs need not be considered sequentially.'" *Id.* (citation omitted).

### ii. Counts V, VI, VII, X, & XIII – Excessive Force

In Count V, plaintiffs allege that defendants violated the 4th and 14th Amendments to the U.S. Constitution by using excessive force to subdue and arrest them. Likewise, in Counts VI and VII, plaintiffs contend that defendants' alleged use of excessive force deprived them of their due process liberty and property interests. In Count X, plaintiffs allege that the defendants conspired together to use excessive force against them in violation of their civil rights. In Count XIII, the second amended complaint alleges deliberate indifference leading to unreasonable seizure through excessive force. As best as can be gleaned from the complaint, this count applies only to the Township. However,

to the extent it is alleged against the individual officers, it is based on the alleged use of excessive force and illegal seizure. As will be explained, the video shows that the amount of force used by the officers against plaintiffs was reasonable when considering the totality of the circumstances. Thus, plaintiffs have not established a constitutional violation and the individual police officers are entitled to qualified immunity.

Whether police used excessive force is judged under an objective "reasonableness" standard. *Rudlaff*, 791 F.3d at 641. Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted). "The assessment is fact-specific, based on the totality of the circumstances, and 'pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." *Baynes*, 2015 WL 5000615, at *5 (citation and internal quotation marks omitted).

Here, viewing the evidence in a light most favorable to the plaintiffs, the individual police officers are entitled to qualified immunity because plaintiffs have not established a constitutional violation. As is seen in the video, the officers were responding to a rapidly evolving confrontation where multiple individuals, including the plaintiffs, posed an immediate threat to the safety of the officers. *See Burgess v. Fischer*, 735 F.3d 462, 473

(6th Cir. 2013). Officers Farmer and Wolosuk were objectively reasonable in the force they used to secure the non-compliant plaintiffs.

Plaintiffs argue that the use of force used against them was not reasonable because, unlike the others involved in the altercation, they did not have warrants out for their arrests, and they were not actively resisting arrest. Thus, plaintiffs contend that there was no objective evidence that they posed a threat to the officers or anyone else. Moreover, plaintiffs argue that, despite what is seen in the video, they were merely trying to diffuse the situation. This argument lacks merit.

The video flatly contradicts any claim by the plaintiffs that the officers' actions were not objectively reasonable. First, despite plaintiffs' argument that they did not have warrants out for their arrests, and, therefore, did not pose a threat to the officers, it was only determined later that they did not have warrants. At the time Officer Farmer approached the vehicle, he did not know the identity of the plaintiffs. The only thing the officers were aware of was that the plaintiffs and other occupants were not complying with their lawful directions.

Second, the dash-cam video reveals - and plaintiffs concede - that they interjected themselves into the confrontation with the police officers. Although plaintiffs claim they had a good motive and were not trying to harm the officers, but instead wanted to diffuse the situation, the officers are still entitled to qualified immunity. As explained above, reasonableness is viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Here, any force used against the plaintiffs by the officers was reasonable. The officers were outnumbered, and plaintiffs were not complying with the officers' lawful commands. The force used was

necessary to obtain compliance and to prevent plaintiffs from harming the officers. Responding to a rapidly evolving situation, the police officers did not have time to determine whether plaintiffs' conduct was an innocent attempt to diffuse the situation. They had to make split-second decisions to protect themselves from harm.

Because the individual police officers acted reasonably in the amount of force they used against plaintiffs, plaintiffs have not established a constitutional violation. The individual police officers are, therefore, entitled to qualified immunity on Counts V, VI and VII.

### iii. Count XI – Equal Protection

In Count XI, plaintiffs allege that the defendant officers violated their right to Equal Protection of the laws in violation of the federal constitution. The premise of plaintiffs' equal protection claim is that they were treated differently than similarly situated, non-aggressive arrestees. Plaintiffs concede that the aggressive arrestees were rightly subdued; however, they argue that as non-aggressive arrestees, they are entitled to equal treatment as similarly situated persons. The individual officers are entitled to qualified immunity.

The Equal Protection Clause prohibits discrimination by the government that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (citation and internal quotation marks omitted). Plaintiffs are proceeding on a class Equal Protection theory: that the defendants treated them differently than other similarly situated non-aggressive arrestees. Both sides agree that rational basis review applies to plaintiffs' Equal Protection claim.

"[G]overnmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it." *TriHealth, Inc. v. Bd. of Com'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (citations omitted) (emphasis in original). Governmental action is "presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (citing *Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)). Plaintiffs have the burden of demonstrating "that a government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged action was motivated by animus or ill-will." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation and internal quotation marks omitted).

Here, plaintiffs have not established an Equal Protection violation. First, the evidence does not support plaintiffs' contention that they are similarly situated to other non-aggressive arrestees. Plaintiffs' role (as seen in the video), however minimal, escalated the rapidly-evolving situation and called for a response from the defendant officers. In other words, plaintiffs are not similarly situated to other non-aggressive arrestees. *See Loesel*, 692 F.3d at 462 (Plaintiffs "have the burden of demonstrating that they were treated differently than other" non-aggressive arrestees "who were similarly situated in *all material respects*.") (citations omitted) (emphasis in original). Second, even if plaintiffs were similarly situated to other non-aggressive arrestees and could establish that they were treated differently, the defendant officers had a rational basis for treating plaintiffs differently: they were responding to an escalating threat to their safety. Defendants' actions were reasonable; they did not have time to determine whether plaintiffs had benign

motives when they placed their hands on the officers during the altercation and refused to comply with the officers' lawful commands. Thus, a conceivable basis supports defendants' actions, and plaintiffs have not shown animus or ill-will.

Plaintiffs have not established an Equal Protection constitutional violation. Thus, the defendant officers are entitled to qualified immunity.

### 2. The State Law Claims

Plaintiffs allege two state law claims: gross negligence for failing to have a policy in place to protect innocent passengers (Count VIII), and gross negligence through the use of physical force (Count IX). These claims fail for two reasons.

First, gross negligence is not a standalone cause of action under Michigan law. Under Michigan's Tort Liability Act, a governmental employee is not liable for personal injuries sounding in tort provided the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(c). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. *Id.* at § 691.1407(7)(a). Michigan law provides that a governmental employee is entitled to immunity for an intentional tort if "(1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature." *Odom v. Wayne Cnty.*, 482 Mich. 459, 461 (2008). However, a gross negligence claim cannot be maintained as a separate cause of action but is only relevant in determining whether a governmental actor is entitled to immunity for an intentional tort. *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011).

Second, as explained above, plaintiffs were not innocent passengers. The video evidence shows otherwise. Thus, this claim is unsupported by the uncontested evidence.

### B. Claims Against the Township

Plaintiffs allege that all of the claims are brought against the Township pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). However, as explained above, plaintiffs have failed to establish an underlying constitutional violation. Thus, their claims against the Township are subject to dismissal. *Thurmond v. Cnty. of Wayne*, 447 F. App'x 643, 651 (6th Cir. 2011) ([I]t is well settled that '[t]here can be no *Monell* [*v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978)] liability under § 1983 unless there is an underlying unconstitutional act.'"), quoting *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007).

### C. Plaintiffs' Non-Specific Requests for Discovery

In response to defendants' motion, and again at oral argument, plaintiffs argued that the court should not dismiss this action because they are entitled to more discovery. However, plaintiffs have not come forward with an explanation of the discovery they say is needed or how discovery would change the events depicted in the dash-cam video. Plaintiffs have not met their burden in avoiding summary judgment.

The Federal Rules of Civil Procedure allow the court to defer ruling on a motion for summary judgment when additional discovery is requested. Rule 56(d) directs:

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;
>
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or

-16-

**(3)** issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Plaintiffs have not specified why they cannot present facts essential to justify an opposition to defendants' motion. Moreover, even if plaintiffs had presented such facts in their response brief or raised them at oral argument, they did not attach an affidavit or declaration stating that additional discovery is needed. Plaintiffs' failure to specify the discovery needed, through affidavit or declaration, is fatal to their request. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) ("We, like other reviewing courts, place great weight on the Rule 56[(d)] affidavit, believing that '[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement . . . to set out reasons for the need for discovery in an affidavit.'").

### IV. CONCLUSION

For the reasons explained above, defendants' motion to dismiss and/or for summary judgment is GRANTED. This case is DISMISSED

IT IS SO ORDERED.

Dated: September 22, 2015

                                         s/George Caram Steeh
                                         GEORGE CARAM STEEH
                                         UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 22, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk